Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2555 | DATE | 11/20/2000 |
| CASE TITLE | Davis Boyd, et al. vs. Norman Wexler | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [13-1] is granted. Judgment is entered in favor of the defendant and against the plaintiffs. This case is dismissed with prejudice.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | NOV 2 2000 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 23 |
| ✓ | Mail AO 450 form. | NOV 2 2000 | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 00 NOV 20 PM 4:28 date mailed notice | |
| RO | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIRGETTA A. DAVIS BOYD and CHARLENE HARRISON, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>NORMAN WEXLER, doing business as )<br>WEXLER AND WEXLER, )<br>)<br>Defendant. ) | No. 00 C 2555<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

In this class action, Plaintiffs Birgetta A. Davis Boyd and Charlene Harrison allege that Defendant Norman Wexler violated the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. §§ 1692e(3) & (10). Plaintiffs' allegations stem from letters sent to them by Wexler on behalf of creditor-clients. Plaintiffs contend that these letters falsely represent that Wexler was acting in a professional capacity as an attorney in attempting to collect debts allegedly owed by Plaintiffs. Presently before the Court is Wexler's Motion for Summary Judgment. For the reasons that follow, the motion is granted.

### RELEVANT FACTS[1]

Wexler is an attorney licenced to practice law in the State of Illinois. Wexler practices at

---

[1] The facts are derived from statements that the parties filed with this Court under Northern District of Illinois' Local Rule 56.1.



the law firm of Wexler & Wexler, where one of his responsibilities is the collection of debts for various creditor-clients. Wexler & Wexler employs three attorneys and approximately forty-five non-attorneys.

Plaintiff Harrison resides in Chicago, Illinois. In February 2000, Wexler sent a letter, on Wexler & Wexler letterhead, to Harrison (the "Harrison letter") seeking to obtain payment owed to its client, Empress Casino Joliet Corp.[2]

---

[2] The body of the Harrison letter states as follows:

    Our Client:    EMPRESS CASINO JOLIET CORP.
    Our File #:    6285046
    Amount Claimed:    $500.00

    Your unpaid bill to our client has been referred to this firm to enforce collection. This debt is long past due.

    Unless you notify our office within 30 days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you do notify us of a dispute, we will obtain verification of the debt and mail it to you. Also, upon your written request within 30 days, we will provide you with the name and address of the original creditor if it is different than what is shown above. This letter is an attempt to collect a debt, and any information obtained will be used for that purpose.

    Kindly remit in full. Please remit all payments to this office.
    Very truly yours,
    WEXLER & WEXLER
WW/A1
    If you need to contact this office by telephone to discuss this matter, you may call Tim Austin at extension #538.
02/12/1998.

(R. 18, Pls.' Statement of Facts, Ex. B.)

Plaintiff Boyd also resides in Chicago, Illinois. In March 2000, Wexler sent a letter, on Wexler & Wexler letterhead, to Boyd (the "Boyd letter") seeking to obtain payment owed to another client, Future Finance Company.[3]

---

[3] The body of the Boyd letter states as follows:

> Our File #: 6[]46677
> Total Claimed:     $4235.92
> If this is a dishonored check, then the following items are included in the total claimed listed above:
> Check(s) Amount:     $4235.92
> Store Contract Charge:     $ .00
> Statutory Check Fee: $
> Check No. & Date:
>                 02/27/1997
>
> Recently, we wrote to you about your long over due debt to our client, FUTURE FINANCE COMPANY.
>
> We have not as yet received your payment nor have we heard from you as to why payment has not been forthcoming. No further delays can be tolerated, you must send us payment in full by return mail or in the alternative contact this office immediately to resolve any problems.
>
> Please cooperate with our request. This letter is an attempt to collect a debt and any information obtained may be used for that purpose.
>
> Please remit all payments to this office.
>
>                         Very truly yours,
>                         WEXLER & WEXLER
> WW/AT2
> 12/15/1999
> If you need to contact this office by telephone to discuss this matter, you may call Tim Austin at extension 538.

(R. 18, Pls.' Statement of Facts, Ex. A.)

Wexler & Wexler has a process in place to handle all debt collection matters, including those related to Plaintiffs, referred to the firm by creditor-clients. (*Id.* at ¶ 5.) First, the creditor-client sends either a hard copy or an electronic file of the debtors' file to Wexler & Wexler. (*Id.*) The file is then sent to data entry at Wexler & Wexler, where a batch report is created. (*Id.*) The internal paperwork is given to the reviewing attorney along with any additional material received from the client, and the attorney reviews each document in the file. (*Id.*) The reviewing attorney documents his review of the file on a log sheet. (*Id.*) In addition, the reviewing attorney reviews and approves any letter before it is mailed and retains the discretion to decide whether to send out a collection letter at all. (*Id.* at ¶¶ 5, 7.) Accordingly, prior to sending the letters at issue in this case, Wexler reviewed Plaintiffs' file materials, determined that the debts were valid, and recommended that each Plaintiff be sent a collection letter. (R. 14, Def.'s Statement of Facts, Ex. A at ¶ 6.)

Wexler & Wexler uses a mail sort service, Mail Sort, Inc., to pick up, sort, and send its mail. (R. 18, Pls.' Resp. to Def.'s Statement of Facts at ¶ 4.) Between January 3, 2000 and September 15, 2000, Wexler & Wexler sent out 439,606 pieces of mail through Mail Sort, Inc., an overwhelming portion of which consisted of collection letters. (*Id.*)

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). The court must view the evidence in a light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249-50.

## II. FDCPA Claims

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To this end, § 1692e of the Act provides, *inter alia*, that

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

The Seventh Circuit evaluates communications from debt collectors "through the eyes of an unsophisticated consumer." *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483-84 (7th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). The unsophisticated consumer is a hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading. *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). This standard presumes a level of sophistication that "is low, close to the bottom of the sophistication meter," *Avila*, 84 F.3d at 226, and "'protects the consumer who is uninformed, naive, or trusting,'" *Jang*, 122 F.3d at 483-84 (citing *Gammon*, 27 F.3d at 1257).

Still, the standard "admits an objective element of reasonableness," which "protects debt collectors from liability for 'unrealistic or peculiar interpretations of collection letters.'" *Id.*

With these standards in mind, we now turn to Wexler's motion for summary judgment.

## ANALYSIS

### I. Plaintiffs' § 1692e(3) Claims

*A. Wexler's Participation and Involvement in the Debt Collection Process*

Plaintiffs claim that Wexler violated § 1692e(3) by sending the debt collection letters to them. They argue that, although Wexler had no meaningful involvement in the preparation or investigation of the accounts on which he was attempting to collect, he falsely represented in his letters that he was acting in his professional capacity as an attorney. Wexler responds that he was directly and personally involved in reviewing Plaintiffs' files and sending debt collection letters to them and, thus, complied with the FDCPA.

Sending a communication to a debtor falsely representing that an individual is an attorney, or that the communication is from an attorney violates § 1692e(3). Congress did not write into the Act a provision requiring a specific, minimum level of involvement by an attorney sending debt collection letters, and this Court declines to do so now. Rather, this Court will adhere to the guidelines set forth by the Seventh Circuit in *Avila*. In *Avila*, the court held that § 1692e requires "direct and personal involvement" by an attorney sending debt collection letters. *Avila*, 84 F.3d at 228. The court explained that personal involvement "may include reviewing the file of individual debtors to determine if and when a letter should be sent or approving the sending of letters based on the recommendations of others." *Id.* A lawyer may not simply act as a rubber stamp when it comes to sending collection letters on behalf of creditor-

clients. Rather, a lawyer must at least pass upon and approve correspondence that purports to come from him. *Id.* at 229.

Wexler has established that he was directly and personally involved in collecting debts from Plaintiffs, and that Wexler & Wexler follows detailed debt collection procedures. First, it is undisputed that Wexler reviewed Plaintiffs' file materials, determined that Plaintiffs' debts were valid, and recommended that Plaintiffs receive collection letters. Second, it is undisputed that Wexler & Wexler has a process in place to handle the debt collection matters referred to them by creditor-clients, including the matters relating to Plaintiffs. As part of this process, Wexler & Wexler receives a copy of the debtor's file from the creditor-client, creates a batch report, sends the internal paperwork, along with any additional material received from the client, to the reviewing attorney, and the attorney reviews each document in the file. The attorney then documents his review of the file on a log sheet. Thus, Wexler & Wexler attorneys review and approve all letters before they are mailed and retain the discretion to decide whether to send out a collection letter at all.

Plaintiffs argue that Wexler "misrepresents the amount of attorney involvement in [his] debt collection efforts," (R. 17, Pls.' Br. in Opp'n to Def.'s Mot. Summ. J. at 7), and that his involvement is limited to the approval of form collection letters, (*id.* at 9). However, Plaintiffs fail to support this argument with sufficient evidence to create a genuine issue of fact regarding either Wexler's direct and personal involvement in sending the collection letters to Plaintiffs or Wexler & Wexler's debt collection practices.

Plaintiffs attempt to attack Wexler and his law firm's involvement in the debt collection process by establishing that between January 3, 2000 and September 15, 2000, Wexler & Wexler

7

mailed out 439,606 pieces of mail, which overwhelmingly consisted of collection letters. From this figure, Plaintiffs compute that each of the attorneys at Wexler & Wexler would have had to review nearly 900 letters each day, and would have been able to spend only seconds on each file. Plaintiffs argue, therefore, that "it is obvious that no meaningful attorney involvement could possibly exist in the production and mailing of these letters." (Pls.' Br. in Opp'n to Def.'s Mot. Summ. J. at 10-11.) The Court is sympathetic to Plaintiffs' claims that Wexler and the attorneys at Wexler & Wexler do not spend as much time on each individual debtor file as they ideally should. Yet, it must be noted that the quality of Wexler's law practice is not the issue. The issue is whether Wexler's letters were inherently deceptive because of a lack of meaningful attorney involvement. The evidence presented by Plaintiff simply is not sufficiently probative to create a genuine issue of material fact to dispute Wexler's evidence that he was directly and personally involved in reviewing Plaintiffs' files and sending the collection letters to them.

Plaintiffs mistakenly rely on *Avila*, 84 F.3d 222, *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993), *Nielsen v. Dickerson*, No. 98 C 5909, 1999 WL 754566 (N.D. Ill. Sept. 9, 1999), and *Nance v. Friedman*, No. 98 C 6720, 2000 WL 1230462 (N.D. Ill. Aug. 28, 2000) to support their position. These cases are easily distinguished from the case at bar. First, both the *Avila* and *Clomon* courts found that the attorney who purportedly was involved in sending the debt collection letters did not review debtors' file, did not determine when particular letters should be sent, did not approve the sending of particular letters based on the recommendation of others, did not see particular letters before they were sent, and did not know the identities of the persons to whom the letters were sent. *Avila*, 84 F.3d at 228-229; *Clomon*, 988 F.2d at 1320. Both courts found that the respective letters, which purported to come from attorneys, were false and

8

misleading because they did not involve attorney review in any meaningful sense. *Avila*, 84 F.3d at 229; *Clomon*, 988 F.2d at 1320. By contrast, Wexler reviewed Plaintiffs' files, knew Plaintiffs' identities, determined that Plaintiffs' debts were valid, and made an independent determination that collection letters should be sent to each of them.

For similar reasons, Plaintiffs' reliance on *Nielsen* also is misplaced. In *Nielsen*, the creditor-client did not forward the entire file for each debtor to the attorney, and the attorney's role merely was to check the letters "for incorrect amounts and typographical errors." *Nielsen*, 1999 WL 754566, at *3. Moreover, the attorney did not review any debtor letters prior to their transmittal. *Id.* at *4. Unlike *Nielsen*, the attorneys at Wexler & Wexler review debtors' files and collection letters before they are sent. Furthermore, Wexler & Wexler attorneys retain the discretion to refrain from sending out debt collection letters under the appropriate circumstances.

Finally, although the facts in *Nance* are similar to those in the case at bar, in *Nance*, the court found that there was a genuine factual issue as to whether the attorney reached a considered, professional judgment that the debtor was delinquent and a candidate for legal action, and therefore denied defendant's motion for summary judgment on the plaintiff's § 1692e(3) claim. *Id.* at *3. By contrast, in the case at bar, we find that Wexler has presented undisputed evidence that, after reviewing the Plaintiffs' files, he reached a considered professional judgment that Plaintiffs' debts were valid, and that Plaintiffs should be sent debt collection letters. Wexler is therefore entitled to summary judgment on Plaintiffs' § 1692e(3) claims. *See e.g., Anthes v. Transworld Sys., Inc.*, 765 F. Supp. 162 (D. Del. 1991) (granting summary judgment in favor of the defendant on plaintiff's § 1692e(3) claim where the attorney

reviewed the materials provided by his client and independently determined whether a collection letter should be sent).

*B. Mass Mailings*

Plaintiffs claim that the letters Wexler sent to them are form letters that Wexler & Wexler mass mails to debtors in violation of the FDCPA. We disagree. Aside from the number of letters that Wexler & Wexler sent out through Mail Sort, Inc. between January and September of 2000, the only additional evidence that Plaintiffs offers in support of their contention is that "on each of these mass produced letters '[t]here is a firm signature' that is not manually signed by an attorney." (R. 17, Pls.' Br. in Opp'n to Def.'s Mot. Summ. J. at 11.)

The issue, however, is not who signed a letter, or how it was produced, but rather whether it falsely represents or implies that it came from an attorney when in fact it did not. 15 U.S.C. § 1692e(3). As noted above, the Court finds that Wexler was directly and personally involved in sending the letters to Plaintiffs. The fact that the letters were signed with the law firm's name, i.e. "Sincerely, Wexler & Wexler," instead of being manually signed by an attorney does not change this result. (R. 17, Pls.' Br. in Opp'n to Def.'s Mot. Summ. J. Ex. D, Wexler Sept. 8, 2000 Dep. at 31.)

## II. Plaintiffs' 1692e(10) Claims

Plaintiffs' claim that Wexler violated § 1692e(10) is based on the same grounds on which Plaintiffs base their § 1692e(3) claim. Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). A close examination of the Harrison and Boyd letters, when considered through the eyes of an unsophisticated consumer,

-10-

reveals nothing inherently misleading or deceptive. Therefore, because Plaintiffs offer no additional evidence in support of their § 1692e(10) claims, for the same reasons this Court finds that Wexler did not violate § 1692e(3), we likewise find that Wexler did not violate § 1692e(10). *See Mizrahi v. Network Recovery Servs., Inc.*, No. 98-CV-4528(ERK)(JLC), 1999 WL 33127737 (E.D.N.Y. Nov. 5, 1999) (where there is no violation of § 1692e(3) and (5), plaintiff's 1692e(10) claim, which is based on the same facts, likewise lacks merit). Accordingly, Wexler's motion is granted as to Plaintiffs' § 1692e(10) claims as well.

## CONCLUSION

For these reasons, we grant Defendant's Motion for Summary Judgment (R. 13-1) in full. The Clerk of the Court is instructed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Defendant.

Entered: _____
United States District Judge
Ruben Castillo

**Date: November 17, 2000**